http://www.va.gov/vetapp16/Files4/1634348.txt

Citation Nr: 1634348 
Decision Date: 08/31/16 Archive Date: 09/06/16

DOCKET NO. 11-31 746A ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Houston, Texas

THE ISSUES

1. Entitlement to an initial evaluation in excess of 10 percent for the service-connected segmental distal 1/3 fibular fracture and medial malleolus fracture, left ankle, healed, with degenerative joint disease (DJD). 

2. Entitlement to service connection for a right knee disability, to include as secondary to service-connected left ankle disability.

3. Entitlement to a total disability rating based on individual unemployability due to a service-connected disability (TDIU).

REPRESENTATION

Appellant represented by: Veterans of Foreign Wars of the United States

ATTORNEY FOR THE BOARD

J. Tunis, Associate Counsel
INTRODUCTION

The Veteran served on active duty from April 1974 to April 1978.

This matter is before the Board of Veterans' Appeals (Board) on appeal from the August 2010 and November 2010 rating decisions by the Waco, Texas, Department of Veterans Affairs (VA) Regional Office (RO). Jurisdiction has been transferred to the RO in Houston, Texas.

In a February 2015 decision, the Board remanded this matter to provide the Veteran with a videoconference hearing before the Board. Although a hearing was previously scheduled for December 2014, the Veteran did not appear, and a review of the record revealed that the November 2014 notice of the scheduled hearing was sent to the incorrect address and was returned undeliverable. Therefore, on remand, the RO was directed to schedule the Veteran for a videoconference hearing and to appropriately notify the Veteran of his scheduled hearing. Accordingly the Veteran was scheduled for a hearing to be held in May 2016, and an April 2016 letter notified the Veteran of his scheduled hearing. However, in the Veteran's July 2016 Informal Hearing Presentation, the Veteran states that he wishes to withdraw his request for a hearing. Thus, the Board considers the Veteran's request for a hearing withdrawn and the Board finds that the RO has sufficiently complied with the February 2015 remand directives. See Stegall v. West, 11 Vet. App. 268 (1998).The matter is now appropriately before the Board once again. 

In the case of Rice v. Shinseki, 22 Vet. App. 447 (2009), the United States Court of Appeals for Veterans' Claims (Court) held, in substance, that every claim for an increased evaluation includes a claim for a total disability evaluation based on individual unemployability (TDIU) where the Veteran claims that his service-connected disabilities prevent him from working. In this case, the Board notes that throughout the record the Veteran indicates that he believes his service-connected disabilities render him unemployable. Accordingly, in light of the holding in Rice, the Board has characterized the issues on appeal so as to include a claim for entitlement to TDIU.

The Board has reviewed the Veteran's records maintained in the Virtual VA paperless claims processing system and the Veterans Benefits Management System (VBMS).

FINDINGS OF FACT

1. For the period prior to February 19, 2014, the segmental distal 1/3 fibular fracture and medial malleolus fracture, left ankle, healed, with degenerative joint disease (DJD), has been manifested by moderate limitation of motion with pain.

2. For the period from February 19, 2014, forward, the segmental distal 1/3 fibular fracture and medial malleolus fracture, left ankle, healed, with degenerative joint disease (DJD), has been manifested by marked limitation of motion with pain.

3. Resolving all reasonable doubt in the Veteran's favor, the Veteran's right knee disability was caused by the Veteran's service-connected left ankle disorder.

4. The evidence of record shows that the Veteran meets the percentage requirements for TDIU, as he has one service-connected disability of 60 percent or more.

5. Resolving doubt in favor of the Veteran, his service connected disabilities have rendered him unable to secure or follow a substantially gainful occupation.

CONCLUSIONS OF LAW

1. For the period prior to February 19, 2014, the criteria for an initial disability rating in excess of 10 percent for the Veteran's segmental distal 1/3 fibular fracture and medial malleolus fracture, left ankle, healed, with degenerative joint disease (DJD), are not met. 38 U.S.C.A. § 1155 (West 2014); 38 C.F.R. §§ 4.1, 4.3, 4.7, 4.40, 4.45, 4.71a, Diagnostic Codes (DCs) 5003, 5010, 5271 (2015).

2. For the period from February 19, 2014, forward, the criteria for a disability rating of 20 percent, but not higher, for the Veteran's segmental distal 1/3 fibular fracture and medial malleolus fracture, left ankle, healed, with degenerative joint disease (DJD), has been met. 38 U.S.C.A. § 1155 (West 2014); 38 C.F.R. §§ 4.1, 4.3, 4.7, 4.40, 4.45, 4.71a, Diagnostic Codes (DCs) 5003, 5010, 5271 (2015).

3. The criteria for service connection for a right knee disability have been met. 38 U.S.C.A. §§ 1110, 1154(a), (b), 5107(b) (West 2014); 38 C.F.R. §§ 3.102, 3.303, 3.310 (2015).

4. The criteria for TDIU have been met. 38 U.S.C.A. §§ 1155, 5102, 5103, 5103A, 5107 (West 2002 & Sup. 2009); 38 C.F.R. §§ 3.340, 3.341, 4.3, 4.16, 4.18, 4.19, 4.25 (2012).

REASONS AND BASES FOR FINDINGS AND CONCLUSION

I. Veterans Claims Assistance Act of 2000 (VCAA)

VA has met all statutory and regulatory notice and duty to assist provisions with respect to the Veteran's claims. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a). Concerning the issue of entitlement to service connection for a right knee disability and the issue of entitlement to TDIU, in light of the fully favorable decisions herein no further discussion of the duty to notify and assist is necessary as these particular issues are concerned. Mlechick v. Mansfield, 503 F.3d 1340 (Fed. Cir. 2007). Therefore, this decision will only discuss the VA's compliance with all statutory and regulatory notice and duty to assist provisions as they pertain to the Veteran's claim for an increased rating of his service-connected left ankle disability.

The VCAA and implementing regulations impose obligations on VA to provide claimants with notice and assistance. 38 U.S.C.A. §§ 5102, 5103, 5103A, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.326(a). The Court issued a decision in the appeal of Dingess v. Nicholson, 19 Vet. App. 473 (2006), which held that the notice requirements of 38 U.S.C.A. § 5103(a) and 38 C.F.R. § 3.159(b) apply to all five elements of a service connection claim, including the degree of disability and the effective date of an award. Those five elements include: (1) veteran status; (2) existence of a disability; (3) a connection between a veteran's service and the disability; (4) degree of disability; and (5) effective date of the disability. 

As this appeal arises from the Veteran's disagreement with the rating following the grant of service connection for segmental distal 1/3 fibular fracture and medial malleolus fracture, left ankle, healed, with degenerative joint disease (DJD), no additional notice is required regarding this downstream element of the service connection claim. The United States Court of Appeals for the Federal Circuit (Federal Circuit) and the Court have similarly held that regarding the downstream element of increased rating that, once service connection is granted the claim is substantiated, additional notice is not required, and any defect in notice is not prejudicial. Hartman v. Nicholson, 483 F.3d 1311 (Fed. Cir. 2007); Dunlap v. Nicholson, 21 Vet. App. 112 (2007) (noting that, once an initial VA decision awarding service connection and assigning a disability rating and effective date has been made, 38 U.S.C.A. § 5103(a) notice is no longer required); 38 C.F.R. § 3.159(b)(3) (no VCAA notice required because of filing of notice of disagreement (NOD)).

Regarding the duty to assist in this case, all relevant documentation has been secured. VA has received significant VA and private medical documentation related to the claims, as well as all records from Social Security Administration. There is no indication in the record that any additional evidence, relevant to the issues decided, is available and not part of the claims file. See Pelegrini v. Principi, 18 Vet. App. 112 (2004). As there is no indication that any failure on the part of VA to provide additional notice or assistance reasonably affects the outcome of the case, the Board finds that any such failure is harmless. See Mayfield v. Nicholson, 20 Vet. App. 537 (2006); see also Dingess/Hartman, 19 Vet. App. at 486; Shinseki v. Sanders/Simmons, 129 S. Ct. 1696 (2009). 

The duty to assist also includes providing a medical examination or obtaining a medical opinion when necessary to make a decision on a claim, as defined by law. See 38 C.F.R. § 3.159(c)(4). In this case, the Veteran was provided with VA examinations of his left ankle in June 2010 and February 2014. The examinations were adequate because the examiners considered and addressed the Veteran's contentions, reviewed the claims file in conjunction with the examinations, and conducted thorough medical examinations of the Veteran, to include appropriate range of motion testing. Furthermore, the examinations addressed the appropriate criteria pursuant to the Diagnostic Code (DC). The Board finds the examination reports to be a thorough, complete, and sufficient bases upon which to reach a decision on the Veteran's claims for increased ratings of his left ankle disability. See Nieves-Rodriguez v. Peak, 22 Vet. App. 295, 302-05 (2008); Barr v. Nicholson, 21 Vet. App. 303, 312 (2007).

Since VA has obtained all relevant identified records and provided adequate medical examinations, its duty to assist in this case is satisfied. VA has met all statutory and regulatory notice and duty to assist provisions with respect to the Veteran's claim. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2015). 

II. Increased Rating of the Left Ankle Disability

Disability evaluations are determined by the application of a schedule of ratings which is based on the average impairment of earning capacity in civil occupations. Separate DCs identify the various disabilities. See 38 U.S.C.A. § 1155; 38 C.F.R. § Part 4 (2015).

Where a veteran appeals the initial rating assigned for a disability at the time that service connection for that disability is granted, evidence contemporaneous with the claim and with the initial rating decision granting service connection would be most probative of the degree of disability existing at the time that the initial rating was assigned and should be the evidence "used to decide whether an original rating on appeal was erroneous . . . ." Fenderson v. West, 12 Vet. App. 119, 126 (1999). If later evidence indicates that the degree of disability increased or decreased following the assignment of the initial rating, "staged" ratings may be assigned for separate periods of time based on facts found. Id.

The Veteran is in receipt of a 10 percent initial disability rating under 38 C.F.R. 
§ 4.71a, DCs 5010 and 5271. He seeks a higher initial disability rating.

DC 5010 provides that arthritis due to trauma that is substantiated by X-ray findings is to be rated as degenerative arthritis. DC 5271 provides ratings based on limitation of extension of the ankle. Moderate limitation of motion of the ankle is rated as 10 percent disabling, and marked limitation of motion of the ankle is rated as 20 percent disabling. 38 C.F.R. § 4.71a.

Normal ranges of motion of the ankle are dorsiflexion from 0 degrees to 20 degrees, and plantar flexion from 0 degrees to 45 degrees. 38 C.F.R. § 4.71, Plate II. 
Further, the provisions of 38 C.F.R. § 4.40 state that a disability affecting the musculoskeletal system is primarily the inability, due to damage or inflammation in parts of the system, to perform normal working movements of the body with normal excursion, strength, speed, coordination and endurance. Functional loss may be due to the absence of part, or all, of the necessary bones, joints and muscles, or associated structures. It may also be due to pain supported by adequate pathology and evidenced by visible behavior of the claimant undertaking the motion. 38 C.F.R. § 4.40.

The Board further evaluates the Veteran's left ankle disability under DC 5003. DC 5003 provides that degenerative arthritis that is established by X-ray findings will be rated on the basis of limitation of motion under the appropriate DCs for the specific joint or joints involved. 

When there is no limitation of motion of the specific joint or joints that involve degenerative arthritis, DC 5003 provides a 20 percent rating for degenerative arthritis with X-ray evidence of involvement of 2 or more major joints or 2 or more minor joint groups, with occasional incapacitating exacerbations, and a 10 percent rating for degenerative arthritis with X-ray evidence of involvement of 2 or more major joints or 2 or more minor joint groups. Note (1) provides that the 20 pct and 10 pct ratings based on X-ray findings will not be combined with ratings based on limitation of motion. Note (2) provides that the 20 percent and 10 percent ratings based on X-ray findings, above, will not be utilized in rating conditions listed under DCs 5013 to 5024, inclusive.

When there is some limitation of motion of the specific joint or joints involved that is noncompensable (0 percent) under the appropriate DCs, DC 5003 provides a rating of 10 percent for each such major joint or group of minor joints affected by limitation of motion, to be combined, not added under DC 5003. Limitation of motion must be objectively confirmed by findings such as swelling, muscle spasm, or satisfactory evidence of painful motion. 

When there is limitation of motion of the specific joint or joints that is compensable (10 percent or higher) under the appropriate DCs, the compensable limitation of motion should be rated under the appropriate DCs for the specific joint or joints involved. 38 C.F.R. § 4.71a.

When evaluating joint disabilities rated on the basis of limitation of motion, VA must consider granting a higher rating in cases in which functional loss due to pain, weakness, excess fatigability, or incoordination is demonstrated, and those factors are not contemplated in the relevant rating criteria. See 38 C.F.R. §§ 4.40, 4.45, 4.59 (2015); DeLuca v. Brown, 8 Vet. App. 202 (1995). The Court clarified that although pain may be a cause or manifestation of functional loss, limitation of motion due to pain is not necessarily rated at the same level as functional loss where motion is impeded. See Mitchell v. Shinseki, 25 Vet. App. 32, 38-43 (2011); cf. Powell v. West, 13 Vet. App. 31, 34 (1999); Hicks v. Brown, 8 Vet. App. 417, 421 (1995); Schafrath v. Derwinski, 1 Vet. App. 589, at 592 (1991). Instead, in Mitchell, the Court explained that pursuant to 38 C.F.R. §§ 4.40 and 4.45, the possible manifestations of functional loss include decreased or abnormal excursion, strength, speed, coordination, or endurance (38 C.F.R. § 4.40), as well as less or more movement than is normal, weakened movement, excess fatigability, and pain on movement (as well as swelling, deformity, and atrophy) that affects stability, standing, and weight-bearing (38 C.F.R. § 4.45). Thus, functional loss caused by pain must be rated at the same level as if the functional loss were caused by any of the other factors cited above. Therefore, in evaluating the severity of a joint disability, VA must determine the overall functional impairment due to these factors. 

The Board further notes that the provisions of 38 C.F.R. § 4.40 and 38 C.F.R. § 4.45 should only be considered in conjunction with the diagnostic codes predicated on limitation of motion. Johnson v. Brown, 9 Vet. App. 7 (1996).

In applying the above law to the facts of the case, the Board finds that for the period prior to February 19, 2014, the Veteran is not entitled to an initial disability rating in excess of 10 percent for his left ankle disorder; and for the period from February 19, 2014, forward, the Veteran is entitled to a disability rating of 20 percent for his left ankle disorder. 38 C.F.R. § 4.71a, DCs 5003, 5010, 5271.

The Board will first address the period prior to February 19, 2014, and the Veteran's claim for an initial disability rating in excess of 10 percent for his left ankle disorder.

In January 2010 and February 2010 private treatment records, J. W., M.D., and J. T., M.D., noted swelling and pain in the Veteran's left lower leg. Moreover, in a March 2010 statement, the Veteran reported that his leg swells while walking or standing, that he limps every day, and that his leg hurts constantly. An additional statement from the Veteran's private physician, J. A. B., M.D. notes that the Veteran previously sustained a left ankle distal tibial and fibular fracture, and that he has now developed severe posttraumatic arthritis that causes the Veteran to walk with a severe limp. 

At the June 2010 VA examination, the Veteran reported that his left ankle is swollen and pops frequently, and that he finds himself increasingly limping, but that he does not use any assistive devices, such as a brace or cane. The Veteran further reported that it is increasingly difficult for him to ascend and descend stairs near the end of the day. The examiner found that the Veteran had an antalgic gait favoring the left ankle, and noted that the process of the physical examination left the Veteran in pain and fatigued. His measured dorsiflex was 20 degrees, and his measured plantar flex was 45 degrees, with no pain at the end of the range of motion maneuvers of the ankle or knee. Upon repetitive motion (three times) the examiner found no additional loss of range of motion due to pain, fatigability, weakness, or lack of endurance of incoordination. The examiner concluded that the Veteran's left ankle now had DJD, but that there "[t]here was no varus or valgus angulation or the os calcis in relationship to the long axis of the tibia and fibula." No joint was noted ankylosis.

In applying the above law to the facts of the case, the Board finds that for the period prior to February 19, 2014, the Veteran is not entitled to an initial disability rating in excess of 10 percent for his left ankle disorder. 38 C.F.R. § 4.71a, DCs 5003, 5010, 5271. Under DCs 5003 and 5010, the Veteran is not entitled to a higher 20 percent disability rating, since his left ankle is compensable under the appropriate limitation of motion code (here, DC 5271). Moreover, the Veteran has not exhibited occasional incapacitating exacerbations, as the criteria for a 20 percent rating under DC 5003 requires. 

Under DC 5271, the Veteran is not entitled to a 20 percent disability rating because the Board finds that his left ankle disorder has not been manifested by marked limitation of motion during the period prior to February 19, 2014. 38 C.F.R. § 4.71a, DCs 5003, 5010, 5271. The Board notes that the Veteran had normal ranges of motion of his left ankle at the June 2010 VA examination, even with consideration of his pain and weakness, with no decrease in range of motion upon repetitive motion. Thus, in applying the above law to the facts of the case, the Board finds that the Veteran is not entitled to an initial disability rating in excess of 10 percent for his left ankle disorder for the period prior to February 19, 2014. 38 C.F.R. § 4.71a, DCs 5003, 5010, 5271. 

The Board has considered the Veteran's complaints of pain in the left ankle. The Board acknowledges that the Veteran is competent to give evidence about what he observes or experiences. For example, he is competent to report that he experiences certain symptoms, such as pain, and he is credible in this regard. See, e.g., Layno, 6 Vet. App. at 465. The Veteran's competent and credible belief that his disability is worse than the assigned rating, however, is outweighed by the competent and credible medical examinations that evaluated the extent of impairment based on objective data coupled with the lay complaints. VA examiners have the training and expertise necessary to administer the appropriate tests for a determination on the type and degree of the impairment associated with the Veteran's complaints. For these reasons, greater evidentiary weight is placed on the physical examination findings. Specifically, the lay and objective medical evidence does not show that his symptoms result in additional functional limitation to the extent that the Veteran's disability warrants a higher disability rating under DCs 5003, 5010, and 5271. 38 C.F.R. § 4.71a. Although, the examiner reported pain and fatigue after the physical examination, the Board notes that the Veteran did not have any additional limitations after three repetitions of ranges of motion of the left ankle. Furthermore, the Veteran's range of motion was normal, the Veteran did not require the use of assistive devices, and although difficult at the end of the days, the Veteran reported being able to work on his feet and climb and ascend stairs. 

Given that the Veteran was able to achieve the aforementioned ranges of motion of the left ankle on examination despite the presence of pain, the Board finds that additional compensation for pain is not warranted. Indeed, pain alone does not constitute a functional loss under VA regulations. See Mitchell, 25 Vet. App. at 32. An award of a higher rating cannot be based on speculation of the additional functional loss in terms of degrees during such flare-ups. Here, the Veteran had normal ranges of motion at the June 2010 VA examination, even with consideration of his pain, weakness, and repetitive motion. The Board finds that the Veteran's painful limitation of motion and additional functional impairment meets the impairment contemplated by the current schedular disability rating during the period prior to February 19, 2014, and does not more nearly approximate functional impairment commensurate with a higher disability rating. Thus, in considering the Veteran's lay statements along with his measured left ankle range of motion, the Board finds that for the period prior to February 19, 2014, the Veteran's left ankle disorder was manifested by moderate limitation of motion. 

The Board has considered the application of the remaining diagnostic codes under the current version of the regulation in an effort to determine whether a higher rating may be warranted for the Veteran's left ankle disorder, but finds none are raised by the medical evidence. DC 5270 is not applicable because the Veteran's left ankle is not ankylosed. 38 C.F.R. § 4.71a.

In sum, the preponderance of the evidence is against the assignment of an initial disability rating in excess of 10 percent for the service-connected left ankle disorder for the period prior to February 19, 2014. Thus, to this extent, the claim is denied. 38 U.S.C.A. § 5107; 38 C.F.R. § 3.102; see Gilbert, 1 Vet. App. at 53.

Turning to the period from February 19, 2014, forward, the Board finds that the Veteran is entitled to a disability rating of 20 percent for his left ankle disorder. 38 C.F.R. § 4.71a, DCs 5003, 5010, 5271.

The Veteran was afforded a VA examination in February 2014. The examination report notes that the Veteran reports flare-ups that impact the function of his ankle, with the Veteran reporting chronic and severe pain of his left ankle, with difficulty walking, standing, and participating in any weight bearing activities. The examination report includes initial range of motion measurements. The Veteran's left ankle measured a plantar flexion ending at 35 degrees, with objective evidence of painful motion beginning at 35 degrees. The Veteran's left ankle measured a plantar dorsiflexion ending at 15 degrees, with objective evidence of painful motion beginning at 15 digress.

The February 2014 VA examination also reported range of motion measurements after repetitive use testing (three repetitions). The examiner reported that the Veteran's left ankle post-test plantar flexion ended at 20 degrees, and the Veteran's left ankle post-test dorsiflexion ended at 5 degrees. Again, the Board notes that normal range of motion is dorsiflexion of 20 degrees, and plantar flexion of 45 degrees. Thus, the examiner noted that the Veteran has additional limitation in range of motion of the ankle following repetitive-use testing, and that the Veteran has functional loss and/or functional impairment of the ankle after repetitive use. Specifically, the contributing factors of disability after repetitive use are indicated to be the following: less movement than normal, weakened movement, excess fatigability, incoordination (impaired ability to execute skilled movements smoothly), pain on movement, swelling, disturbance of locomotion, and interference with sitting, standing, and weight-bearing. The Veteran reported constant use of a cane as his assistive device.

Moreover, the February 2014 examiner reported that the Veteran has localized tenderness or pain on palpitation of joints/soft tissue of the left ankle, but active movement against some resistance and normal strength upon muscle strength testing of the left ankle. The Veteran does not, however, have ankyloses, or any other conditions to include shin splits, stress fractures, achilles tendonitis, achilles tendon rupture, maluion of calcaneus (os clacis) or talus (astragalus), or talectomy (astragalectomy). The examiner did note that the Veteran has DJD, which is a progression of the diagnosis, with the Veteran reporting a worsening of pain and difficulty walking.

In applying the above law to the facts of the case, the Board finds that for the period from February 19, 2014, forward, the Veteran is entitled to a disability rating of 20 percent for his left ankle disorder. 38 C.F.R. § 4.71a, DCs 5003, 5010, 5271. Under DCs 5003 and 5010, the Veteran is not entitled to a higher percent disability rating, since his left ankle is compensable under the appropriate limitation of motion code (here, DC 5271), and since the maximum disability rating under DCs 5003 and 5010 is 20 percent, which the Board is herein granting for the period on and after February 19, 2014.

Under DC 5271, the Veteran is entitled to a 20 percent disability rating because the Board finds that his left ankle disorder has been manifested by marked limitation of motion during the period on and after February 19, 2014. 38 C.F.R. § 4.71a, DCs 5003, 5010, 5271. The Board notes that the Veteran had decreased ranges of motion of his left ankle at the February 2014 VA examination, and a significant decrease in range of motion upon repetitive motion. Thus, in applying the above law to the facts of the case, the Board finds that the Veteran is entitled to an increased disability rating of 20 percent for his left ankle disorder for the period from February 19, 2014, forward. 38 C.F.R. § 4.71a, DCs 5003, 5010, 5271. 

Again, in forming this decision, the Board has considered the Veteran's complaints of pain in the left ankle, together with the examination of record. The Board acknowledges that the Veteran is competent to give evidence about what he observes or experiences. For example, he is competent to report that he experiences certain symptoms, such as pain, and he is credible in this regard. See, e.g., Layno, 6 Vet. App. at 465. However, VA examiners have the training and expertise necessary to administer the appropriate tests for a determination on the type and degree of the impairment associated with the Veteran's complaints. Therefore, considering both lay and objective medical evidence shows that his symptoms result in additional functional limitation to the extent that the Veteran's disability warrants a higher disability rating under DCs 5003, 5010, and 5271. 38 C.F.R. § 4.71a. The Veteran's initial range of motion, and even more notably the Veteran's range of motion post-repetitive use testing, indicates marked limitation of motion. The Veteran reports chronic and severe pain with decreased ability to walk, and the examination report also reports such severe limitation in motion. The Veteran reports constant use of a cane, and the examiner pain, swelling, instability, and interference with sitting, standing, and weight-bearing.

Therefore, given that the Veteran's aforementioned ranges of motion of the left ankle on examination, along with the pain and accompanying manifestations, such as swelling, the Board finds that additional compensation is warranted. While, pain alone does not constitute a functional loss under VA regulations, and an award of a higher rating cannot be based on speculation of the additional functional loss in terms of degrees during such flare-ups, here, the Veteran has decreased range of motion on initial testing, and significantly decreased range of motion and functional limitations post-repetitive use testing. See Mitchell, 25 Vet. App. at 32. Thus, the Board finds that the Veteran's painful limitation of motion and additional functional impairment meets the impairment contemplated by the current schedular disability rating during the period on and after February 19, 2014, and more nearly approximates functional impairment commensurate with the higher disability rating of 20 percent. Thus, in considering the Veteran's lay statements along with his measured left ankle range of motion, the Board finds that the Veteran's left ankle for the period on and after February 19, 2014, is manifested by marked limitation of motion. 

Because the maximum disability rating under DC 5271 is 20 percent, the Board notes that the Veteran is in receipt of the maximum benefit allowable for this period under this code. However, once again, the Board has considered the application of the remaining diagnostic codes under the current version of the regulation in an effort to determine whether a higher rating may be warranted for the Veteran's left ankle disorder, but finds none are raised by the medical evidence. DC 5270 is not applicable because the Veteran's left ankle is not ankylosed. 38 C.F.R. § 4.71a.

In sum, the evidence of record warrants the assignment of a 20 percent disability rating for the service-connected left ankle disorder for the period from February 19, 2014, forward. Thus, to this extent, the claim is granted. 38 U.S.C.A. § 5107; 38 C.F.R. § 3.102; see Gilbert, 1 Vet. App. at 53.

III. Extraschedular Considerations

The above determination is based on application of provisions of the VA's Schedule for Rating Disabilities. 38 C.F.R. Part 4 (2015). However, the regulations also provide for exceptional cases involving compensation. Pursuant to 38 C.F.R. § 3.321(b)(1) (2015), the VA Under Secretary for Benefits or the Director of the Compensation and Pension Service is authorized to approve an extraschedular evaluation if the case "presents such an exceptional or unusual disability picture with such related factors as marked interference with employment or frequent periods of hospitalization as to render impractical the application of the regular schedular standards." 38 C.F.R. § 3.321(b)(1). 

The question of an extraschedular rating is a component of a claim for an increased rating. See Bagwell v. Brown, 9 Vet. App. 337, 339 (1996). Although the Board may not assign an extraschedular rating in the first instance, it must specifically adjudicate whether to refer a case for extraschedular evaluation when the issue either is raised by the claimant or is reasonably raised by the evidence of record. Barringer v. Peake, 22 Vet. App. 242 (2008). 

If the evidence raises the question of entitlement to an extraschedular rating, the threshold factor for extraschedular consideration is a finding that the evidence before VA presents such an exceptional disability picture that the available schedular evaluations for that service-connected disability are inadequate. Therefore, initially, there must be a comparison between the level of severity and symptomatology of a veteran's service-connected disability with the established criteria found in the rating schedule for that disability. Thun v. Peake, 22 Vet. App. 111 (2008). 

If the criteria reasonably describe the claimant's disability level and symptomatology, then a veteran's disability picture is contemplated by the rating schedule. The assigned schedular evaluation is, therefore, adequate, and no referral is required. In the second step of the inquiry, however, if the schedular evaluation does not contemplate the claimant's level of disability and symptomatology, and is found inadequate, the RO or Board must determine whether the claimant's exceptional disability picture exhibits other related factors such as those provided by the regulation as "governing norms." 38 C.F.R. 3.321(b)(1) (related factors include "marked interference with employment" and "frequent periods of hospitalization"). 

Here, because the schedular rating for the Veteran's left ankle disorder fully address his symptoms, which include mainly pain and limitation of motion, referral to the VA Under Secretary for Benefits or the Director of Compensation and Pension Service for consideration of an extraschedular evaluation is not warranted. A comparison between the level of severity and symptomatology of the left ankle with the established criteria shows that the rating criteria reasonably describe the Veteran's disability level and symptomatology. Specifically, the Veteran reports pain, weakness, and limitation of motion that affects his ability to walk. The regulations address limitation of motion, pain, and weakness, and the Veteran's pain upon motion and weakness were considered in assigning him his current disability rating. There is no credible evidence that the Veteran's service-connected disability causes impairment that is not contemplated by the schedular rating criteria or that renders impractical the application of the regular schedular standards. See Thun, 22 Vet. App. at 111. Accordingly, referral of this case for consideration of an extraschedular rating is not warranted. Id.; see also Bagwell v. Brown, 9 Vet. App. 337 (1996); Floyd v. Brown, 9 Vet. App. 88 (1996). 

Further, the Board notes that under Johnson v. McDonald, 762 F.3d 1362 (Fed. Cir. 2014), a veteran may be awarded an extraschedular rating based upon the combined effect of multiple conditions in an exceptional circumstance where the evaluation of the individual conditions fails to capture all the service-connected disabilities experienced. However, in this case, after applying the benefit of the doubt under of Mittleider v. West, 11 Vet. App. 181 (1998), there are no additional service-connected disabilities that have not been attributed to a specific service-connected condition, nor has the Veteran asserted such combined effects of his multiple service-connected conditions. Accordingly, this is not an exceptional circumstance in which extraschedular consideration may be required to compensate the Veteran for a disability that can be attributed only to the combined effect of multiple conditions. 

IV. Service Connection of the Right Knee Disability

In general, service connection may be granted for disability or injury incurred in, or aggravated by, active military service. See 38 U.S.C.A. §§ 1110, 1131 (West 2014); 38 C.F.R. § 3.303 (2015). In order to establish service connection for a claimed disorder, there must be (1) a current disability; (2) an in-service incurrence or aggravation of a disease or injury; and (3) a nexus between the claimed in-service disease or injury and the current disability. See Hickson v. West, 12 Vet. App. 247, 253 (1999). Where a disease is first diagnosed after discharge, service connection will be granted when all of the evidence, including that pertinent to service, establishes that it was incurred in active service. See 38 C.F.R. § 3.303(d) (2015); Combee v. Brown, 34 F.3d 1039, 1043 (Fed. Cir. 1994).

A disability can be service-connected on a secondary basis if proximately due to, or the result of, a service-connected condition. See 38 C.F.R. § 3.310(a) (2015). In order to establish entitlement to service connection on a secondary basis, there must be (1) a current disability; (2) a service-connected disability; and (3) a nexus between the service-connected disability and the current disability. See Wallin v. West, 11 Vet. App. 509, 512 (1998). Additional disability resulting from the aggravation of a non-service-connected condition by a service-connected condition is also compensable. 38 C.F.R. § 3.310(a) (2015); Allen v. Brown, 7 Vet. App. 439, 448 (1995).

The determination of whether the requirements of service connection have been met is based on an analysis of all the evidence of record and the evaluation of its credibility and probative value. See Baldwin v. West, 13 Vet. App. 1, 8 (1999). When there is an approximate balance of evidence regarding the merits of an issue material to the determination of the matter, the benefit of the doubt in resolving each issue shall be given to the claimant. See 38 U.S.C.A. § 5107 (West 2014); 38 C.F.R. §§ 3.102, 4.3 (2015). A claimant need only demonstrate an approximate balance of positive and negative evidence in order to prevail. See Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990). For a claim to be denied on the merits, a preponderance of the evidence must be against the claim. See Alemany v. Brown, 9 Vet. App. 518, 519 (1996).

The Veteran seeks service connection for a right knee disability on a secondary basis related to his service-connected left ankle disability. See April 2010 Statement in Support of Claim. After a review of the record, the Board grants service connection for the right knee disability on a secondary basis.

As to the first element of entitlement to service connection on a secondary basis, the Veteran has a current disability, having been diagnosed with a right knee disability, to specifically include a right knee meniscus tear and right knee DJD. See, e.g., August 2011 VA examination. Therefore, the first element of service connection has been met.

As to the second element of entitlement to service connection on a secondary basis, a service-connected disability, the Veteran is currently service connected for a left ankle disability, service connected as segmental distal 1/3 fibular fracture and medial malleolus fracture, left ankle, healed, with degenerative joint disease (DJD), and herein evaluated at 10 percent for the period prior to February 19, 2014, and at 20 percent for the period from February 19, 2014, forward.

Last, as for the third element of entitlement to service connection on a secondary basis, a nexus between the service-connected disability and the current disability, the Board finds that, resolving reasonable doubt in favor of the Veteran, the evidence is at least in equipoise as to whether the Veteran's right knee disability was caused by his service-connected left knee disability.

In an April 2010 letter from the Veteran's private physician, K. B. J., M.D., the physician offered the following opinion: "It is my medical opinion that with the left ankle fracture and the development of arthritis, that he would favor the right side as he walks . . . ." Moreover, in a December 2010 letter from J. A. R., M.D., the physician stated that the Veteran's left ankle disability causes the Veteran to walk with a severe limp, which has caused a severe varus thrust on the right knee and excessive stress on the right knee. Specifically, Dr. J. A. R. stated,

"This led to an accelerated degeneration of the knee and has, therefore, caused the advanced degenerative changes within the medial compartment of his right knee. This is very consistent with the gait cycle, which [the Veteran] demonstrates, and there is no doubt in my mind that the left ankle posttraumatic arthritis due to this injury in the service was the cause of the excessive stress on the right knee during his gait cycle."

Therefore, the Veteran's treating physician concludes, "[t]here is no doubt that the left ankle posttraumatic arthritis caused the abnormal gait cycle leading to the accelerated degenerative changes in the right knee."

The Veteran was afforded a VA examination in August 2011. While the examiner recognized the Veteran's private medical opinions, the examiner opined that the Veteran's right knee disability is less likely than not caused by or a result of the Veteran's left ankle degenerative disease and fibular fracture. The examiner supported his opinion with the following rationale: 

"Although, there is a chance that a properly healed left fibular fracture may change the gait pattern, the current finding observed at the bilateral knee x-ray area is more compatible with mild degenerative joint disease related to normal process of aging. He was working for more than 30 years as a mechanic and during the last 2 years, he started complaining about his right knee. As part of his job description, he was required to kneel for prolonged periods of time, which one of the most common reasons to develop degenerative disease of the knee and meniscus tear. He is also having a weight problem that increases the chance to develop degenerative disease over his right knee."

However, in a December 2011 VA Form 9 and December 2014 Informal Hearing Presentation, the Veteran notes that while the VA examiner was right that he worked for more than 30 years as a mechanic, he never had to kneel for prolonged periods of time, and that his weight problem began only after he was unable to work and quit his job as a result of his service-connected disabilities.

The Board finds the positive private nexus opinions to be probative, and finds that the evidence is at least in equipoise as to whether the Veteran's service-connected left ankle disability caused the Veteran's right knee disability. The private opinions are supported by medical evidence of record, provided by the Veteran's treating physicians, and are sufficiently supported by rationale. The private physicians both note the Veteran's altered gait as a result of the Veteran's left ankle disability, and provide an opinion and rationale that connects the Veteran's altered gait with the Veteran's right knee disability. In fact, the VA examiner also conceded that there is a chance that a the Veteran's left ankle disability may change the Veteran's gait pattern. Moreover, a VA examination from June 2010 reports an altered gait that favors the left ankle, and the most recent VA examination from February 2014 also notes an altered gait, with worsening conditions, increased difficulty walking, and the constant use of a cane. Therefore, given the opinions of record along with the entire medical evidence of record, the Board finds that the evidence is at least in equipoise as to whether the Veteran's service-connected left ankle disability caused the Veteran's right knee disability.

Thus, the Board resolves reasonable doubt in favor of the Veteran by finding that his right knee disability has been caused by his service-connected left ankle disability. The claim of entitlement to service connection for a knee disability, therefore, is granted.

V. Entitlement to TDIU

It is the established policy of VA that all veterans who are unable to secure and follow a substantially gainful occupation by reason of service-connected disabilities shall be rated totally disabled. See 38 C.F.R. § 4.16. A finding of total disability is appropriate "when there is present any impairment of mind or body which is sufficient to render it impossible for the average person to follow a substantially gainful occupation." See 38 C.F.R. §§ 3.340(a)(1), 4.15.

TDIU may be assigned where the schedular rating is less than total and it is found that the disabled person is unable to secure or follow a substantially gainful occupation as a result of either (1) a single service-connected disability ratable at 60 percent or more, or (2) two or more disabilities, provided at least one disability is ratable at 40 percent or more, and there is sufficient additional service-connected disability to bring the combined rating to 70 percent or more. 38 C.F.R. §§ 3.340, 3.341, 4.16(a). 

If a sufficient rating is present, then it must be at least as likely as not that the Veteran is unable to secure or follow a substantially gainful occupation as a result of that disease. See 38 C.F.R. § 4.16(a). The central inquiry is, "whether the veteran's service-connected disabilities alone are of sufficient severity to produce unemployability." Hatlestad v. Brown, 5 Vet. App. 524, 529 (1993). The issue is not whether the Veteran can find employment generally, but whether the Veteran is capable of performing the physical and mental acts required by employment. Van Hoose v. Brown, 4 Vet. App. 361, 363 (1993). Consideration may be given to the Veteran's education, special training, and previous work experience, but not to his age or to the impairment caused by nonservice-connected disabilities. See 38 C.F.R. §§ 3.341, 4.16, 4.19; see also Van Hoose, 4 Vet. App. at 363.When a Veteran is unemployable by reason of his service-connected disabilities, but does not meet the percentage standards set forth in § 4.16(a), TDIU claims should be submitted to the Director, Compensation and Pension Service, for extraschedular consideration. 38 C.F.R. § 4.16(b). The Board is precluded from assigning a TDIU rating on an extraschedular basis in the first instance. Instead, the Board must refer any claim that meets the criteria for referral for consideration of entitlement to a TDIU on an extraschedular basis to the Director, Compensation and Pension Service.

In this case, the Veteran meets the threshold requirements for TDIU, and therefore, extraschedular does not apply. 38 C.F.R. §§ 3.340, 3.341, 4.16(a). The Veteran contends that he is unable to secure or follow a substantially gainful occupation as the result of his multiple service-connected disabilities. The Veteran is currently service-connected for the following: posttraumatic stress disorder (PTSD) with persistent depressive disorder at 70 percent, effective February 2, 2015; arthritis of the lumbar spine with DJD at 10 percent, effective March 17, 2010, and at 20 percent, effective February 2, 2015; segmental distal 1/3 fibula fracture of the left ankle with DJD at 10 percent prior to February 19, 2014, and at 20 percent from February 19, 2014, forward (decided herein). Therefore, the Board acknowledges that the threshold requirement for TDIU is met because the Veteran has two or more disabilities, with at least one disability ratable at 40 percent or more, and there is sufficient additional service-connected disability to bring the combined rating to 70 percent or more. 38 C.F.R. §§ 3.340, 3.341, 4.16(a). 

With the threshold requirements satisfied, the Board finds that the evidence is at least in equipoise regarding the question of whether the Veteran is unable to secure or follow a substantially gainful occupation as a result of his service-connected disabilities. In determining whether the Veteran is capable of obtaining and maintaining gainful employment, the Board must consider the Veteran's work history, education, and any special training. In this case, the Veteran's education is indicated to be mechanical maintenance, and he received his education from 1981 to 1985. The Veteran further reports that he has worked in mechanical maintenance for more than 30 years. See June 2011 VA examination. The Veteran last worked in mechanical maintenance in December 2010, from which he quit as a result of his disabilities. See August 2015 Request for Employment Information; see also August 2015 Statement in Support of Claim.

In a March 2010 statement, the Veteran noted that he is a maintenance tech and that he is only 55 years old and falling apart. The Veteran further stated that he is on his feet all day long and that his conditions are starting to affect his job. Additionally, in a December 2011 VA Form 9 and December 2014 Informal Hearing Presentation, the Veteran asserted that he worked for more than 30 years but that he was forced to quit his job because he was in constant pain and had weakness in his left foot. Specifically, the Veteran stated that his leg made any work requiring ambulation or prolonged standing painful and difficult.

Furthermore, in a statement dated August 2015, the Veteran stated that he is currently receiving Social Security Disability as a result of his service-connected injuries, and that he left both of his last two jobs under bad conditions, mainly due to his temper and secondly his health. The Veteran stated, "I had to leave the workforce because I could no longer do the work that was required of me." The Veteran noted that in addition to constant pain, he has anger issues. See Veteran's Application for Increased Compensation.

The Veteran has been receiving Social Security Disability since 2011, and the Social Security Disability documents indicate that the Veteran's abilities are limited and his ability to work is limited as a result of his back injury, left ankle injury, right knee injury, hip injury, and vein blockage. The Board notes that while the determination of the Social Security Administration is not dispositive, a number of the listed injuries that affect the Veteran's functioning and ability to work are currently service-connected. See Collier v. Derwinski, 1 Vet. App. 413 (1991) (indicating the SSA's favorable determination, while probative evidence to be considered in the claim with VA, is not dispositive or altogether binding on VA since the agencies have different disability determination requirements).

In addition to the Veteran's work-history, education, and lay statements, numerous medical records and opinions have been associated with the claims file. The June 2010 VA examination of the Veteran's left ankle notes that the Veteran's job requires him to stand on his feet for more than 30 minutes and walk 1/4 mile, and that the Veteran reports needing to change into new work boots every four months because he is on his feet working so much. The June 2010 VA examination further reported an antalgic gait favoring the left ankle, pain, swelling, and frequent "popping" of his left ankle, with increasing symptoms at the end of a long day. An additional VA examination of the Veteran's left ankle was conducted in February 2014. The examination report indicates constant use of cane, significant chronic and severe pain, difficulty walking, standing, and doing anything requiring weight-bearing, with notable functional limitations and limitations in range of motion. The February 2014 found that the left ankle disability caused weakened movement, excess fatigability, pain on movement, swelling, interference with standing, sitting, and weight-bearing, and incoordination. The examiner concluded,
"The functional impact of the ankle conditions on the claimant's ability to work is constant pain and weakness in left leg and foot with breakdown of scar tissue on lateral leg makes any standing and ambulation difficult and any work requiring ambulation or prolonged standing painful and difficult."

Also of record is an August 2011 VA examination of the Veteran's right knee. The VA examiner reported that the Veteran's right knee has flare-ups that impact the function of the knee, and that the Veteran has functional loss and/or impairment of the knee and limitations in range of motion of the knee following repetitive-use testing. Specifically, as result of the Veteran's right knee disability, the Veteran suffers from less movement than normal, weakened movement, pain on movement, disturbance of locomotion, and interference with sitting, standing, and weight-bearing. Again, the Veteran noted constant use of a cane. 

A VA examination of the Veteran's back was conducted in April 2015. The examiner determined that the Veteran's thoracolumbar spine (back) condition impacted his ability to work in that the Veteran suffers from increased back pain with prolonged sitting, standing, and forward bending.

Last, in July 2015, a VA examination of the Veteran's PTSD with persistent depressive disorder was conducted, in which the examiner found that the Veteran's suffers from occupational and social impairment with deficiencies in most areas, such as work, school, family relations, judgment, thinking and/or mood. The Veteran's symptoms include, but are not limited to, anxiety, depressed mood, suspiciousness, mild memory loss, speech intermittently illogical, difficulty in understanding complex commands, suicidal ideation, neglect of personal appearance and hygiene, markedly diminished interest or participation in significant activities, feelings of detachment, irritable behavior, reckless or self-destructive behavior, hypervigilance, problems with concentration, and sleep disturbances.

The Board finds the several VA examination opinions to be probative in this matter, for the examiners consistently find the Veteran's ability to function and perform tasks at work to be limited. The VA examinations throughout the record note functional loss as a result of the Veteran's physical disabilities, to specifically include his service-connected spine, left ankle, and right knee (granted herein) disabilities, and as a result of his service-connected acquired psychological disability, namely PTSD with persistent depressive disorder. Therefore, in addition to the Veteran's assertions that he was forced to quit his job as a result of his service-connected disabilities, the medical evidence of record significantly supports the Veteran's assertions. See Layno v. Brown, 6 Vet. App. 465, 469 (1994) (stating that a veteran is competent to report symptoms because this requires only personal knowledge, not medical expertise, as it comes to them through their senses)

Thus, in weighing the lay and medical evidence of record, as well as the Veteran's education and work history, the Board finds that the weight of the evidence demonstrates that the Veteran is not able to obtain or maintain substantially gainful employment in his prior field or in another profession or field due to his multiple service-connected disabilities and that entitlement to TDIU is warranted.

 (CONTINUED ON NEXT PAGE)

ORDER

An initial disability rating in excess of 10 percent for the Veteran's segmental distal 1/3 fibular fracture and medial malleolus fracture, left ankle, healed, with degenerative joint disease (DJD), for the period prior to February 19, 2014, is denied. 

A rating of 20 percent, but not higher, for the Veteran's segmental distal 1/3 fibular fracture and medial malleolus fracture, left ankle, healed, with degenerative joint disease (DJD), from February 19, 2014, forward, is granted subject to regulations governing the payment of monetary awards.

Entitlement to service connection for a right knee disability, to include as secondary to service-connected left ankle disability, is granted.

Entitlement to a total disability rating based on individual unemployability (TDIU) is granted.

______________________________________________
K. J. Alibrando
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs